NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0473-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DIANE MONACO,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 17, 2016

APPELLATE DIVISION

Submitted November 5, 2015 — Decided March 17, 2016

Before Judges Alvarez, Ostrer and Manahan.

On appeal from the State of New Jersey, Law Division, Morris County, Municipal Appeal No. 13-041.

Diane Monaco, appellant pro se.

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Diane Monaco appeals from her June 24, 2014 conviction, after a trial de novo, of driving while under the influence of intoxicating liquor (DUI), N.J.S.A. 39:4-50, and refusing to submit to a chemical breath test, N.J.S.A. 39:4-

50.2. Having considered defendant's arguments in light of the facts and applicable law, we affirm.

I.

At the municipal court trial, East Hanover Police Officers Michael Filippone and Randy Patner testified for the State. Defendant testified in her own defense. She also called Gil Snowden, an expert of field sobriety tests; John Scolamiero, M.D., her personal physician; and a friend, Claudette Maher. We discern the following facts from the record.

Shortly after midnight on April 14, 2012, defendant drove through a stop sign at a T-shaped intersection in a residential neighborhood of East Hanover Township. Failing to turn right or left, she continued forward, jumped the curb, and came to a stop on the lawn of a residence. The airbag deployed.

When Filippone arrived at the scene, defendant's vehicle was still in drive, but the engine was off. Filippone detected the odor of alcoholic beverage. Defendant's speech was slurred. Other aspects of defendant's appearance indicated intoxication. She denied consuming any alcoholic beverages.

The officer administered field sobriety tests. Defendant performed poorly on an alphabet test, skipping several letters. Although she stated she had an injury to her left knee, the officer observed that defendant had no difficulty walking. He

2

asked her to perform the one-leg stand and heel-to-toe tests. She did poorly on both. She was staggering and swaying. Her eyes were watery and bloodshot; her face was flushed. The officer arrested defendant, and she was transported to the police station.

Defendant was initially held in a processing room for about a half hour, as depicted by a video recording in evidence. During that time, she was searched by a police matron, given a Miranda[1] warning, and read the standard statement regarding chemical breath tests, and the DWI questionnaire. Patner also completed a property report. Defendant appeared calm and cooperative. She admitted she had consumed wine that evening. An officer permitted her to use her inhaler for her asthma. Over twenty minutes elapsed thereafter while Filippone, Patner (who had also been dispatched to the scene), or the matron were present in the room. Filippone and Patner both testified defendant did not regurgitate or put anything in her mouth. Defendant was then escorted to another room where Filippone administered the breath test.

Filippone instructed defendant that she needed to breathe in deeply, and blow in one long continuous breath until he

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

directed her to stop. When defendant interjected that she had used her inhaler, Filippone responded it would not interfere with her test, because she had done so over twenty minutes earlier. After the first attempt, Filippone asserted she was not making a genuine effort to blow into the mouthpiece. Defendant responded she had asthma. After two more attempts, Filippone terminated the breath test.[2] Defendant's air volumes were .7, 1.0 and .5 liters, over 5.2, 5.9 and 4.1 seconds, respectively. Defendant was then taken to a cell, where she acted belligerently, yelled, and cursed.

Filippone's trial testimony presented the facts set forth above. Patner testified that he observed defendant during the twenty-minute observation period.

Defendant testified that she had one glass of wine at dinner with her daughter, and a second glass while visiting Maher at her home. She said she drove through the stop sign while she was distracted by a phone call from Maher. She said her knee injury, which she documented, prevented her from performing well on the field sobriety tests. She also presented

---

[2] Although the officer was authorized to terminate the test at that time, we do not condone the officer's harsh language. Having concluded defendant did not try to complete the test, he demeaned defendant, stating she disgusted him. The officer lacked the expertise to judge the extent of defendant's claimed disability.

evidence of another medical condition to explain an aspect of her appearance when arrested.

Defendant challenged Filippone's testimony. She asserted he could not have detected an odor of alcoholic beverage as she had consumed coffee at the end of the evening. She denied that he asked her if she needed medical attention. She also maintained he did not ask her to recite the alphabet, and he did not adequately instruct her how to perform the physical field sobriety tests. She asserted she blew as hard as she could when performing the breath test.

Defendant also claimed there was an interruption in the twenty-minute observation period because she was permitted to leave the processing room to use the restroom in a cell, before returning to the processing room. She asserted the police had tampered with the video evidence.

Dr. Scolamiero, defendant's treating physician for roughly twenty-five years, was permitted to testify as an expert in internal medicine with treatment of pulmonary issues as part of his practice. The doctor testified defendant suffered from asthma, for which he had prescribed multiple medications. The municipal court judge sustained an objection to the question whether, in the doctor's opinion, defendant was able to exhale 1.5 liters of air during a four-and-a-half second period. The

court held defense counsel had not laid a sufficient foundation. Defense counsel never returned to the question, although the doctor's testimony resumed on the next trial day, when he presented pulmonary function tests he administered before and after defendant's arrest.

The doctor reviewed the test results from November 11, 2011. He stated that post-treatment, defendant's "forced expiratory volume" was only fifty-six percent of what was predicted for a woman of her age, weight, and body mass index. Her flow rate was forty-five percent of what was predicted. The report indicated defendant had "moderate obstruction."

However, the doctor's explanation of the test results was often confusing and self-contradictory, particularly when he was asked to describe defendant's test results that would allow for comparisons with the minimum breathing volumes required for the chemical breath test.[3] He did assert that defendant "had an ability prior to being treated for approximately . . . 1.3 to

---

[3] For example, the doctor was asked, "Doctor, now with regard to D-26 [the test results for June 25, 2012], can you calculate Ms. Monaco's flow rate in terms of liters per minute?" (emphasis added). He responded, "That was 1.643." He was asked to explain how he arrived at 1.643. He responded, "Forced expiratory volume which is in this case 133 times the percent .33, divided by her BMI." After the judge confirmed defendant's BMI, the doctor was asked, "And that figure again, Doctor, is what"? He answered, "1.643." He was asked "And that's liters per minute?" He answered, contrary to his answer earlier, "That's in four and a half seconds."

1.4 liters over about four or five seconds." She improved to three liters post-treatment. However, he noted that tests were performed while defendant was standing. Her results would be roughly twenty percent lower if seated while taking a chemical breath test. He asserted that factors such as excitability, nervousness, anxiety, and trauma could also negatively affect a person's ability to breathe at a particular volume.

Snowden testified about how a person's physical impairments could affect balance and performance on field sobriety tests. Maher testified that defendant had a glass of wine early in the evening, and a cup of coffee later. She stated she called defendant shortly after she left, but did not reach her. Soon thereafter, defendant called Maher to report the accident.

The municipal court credited the police witnesses over defendant, and found her guilty of DUI and refusal. As defendant had a prior DUI in 2009, the court imposed, on the DUI, a two-year loss of license, forty-eight hours at the Intoxicated Driver Resource Center (IDRC), no jail time, an ignition interlock, and mandatory minimum fines and fees; and, on the refusal, a consecutive two-year loss of license, forty-eight hours at the IDRC, interlock to run concurrent, and mandatory minimum fines and fees.

In the trial de novo, defendant argued the police lacked probable cause to arrest because they did not properly administer the field sobriety tests; the police were not credible; the police failed to observe defendant for the requisite twenty-minute period; the police read her an outdated standard statement; the state tampered with evidence; and Dr. Scolamiero established that defendant was physically incapable of breathing at a sufficient volume for the Alcotest. The Law Division judge rejected each of these arguments.

The court found there was probable cause to arrest based on the totality of the circumstances confronting the arresting officers. Citing State v. Bealor, 187 N.J. 574, 589 (2006) and State v. Morris, 262 N.J. Super. 413, 421-22 (App. Div. 1993), the court found that probable cause existed, even absent the field sobriety tests, based on the single-car accident, the odor of alcohol, defendant's physical appearance, and slurred speech. The field sobriety tests only bolstered the finding of probable cause. Coupled with her admission that she consumed wine, the court found the State established beyond a reasonable doubt that defendant was guilty of DUI.

The court rejected defendant's challenge to the officers' credibility. Citing State v. Johnson, 42 N.J. 146, 157 (1964), the court gave due, but not controlling, regard to the municipal

court judge's determination that the officers were more credible than defendant.

The court also found that the State proved, by clear and convincing evidence, that the State complied with the twenty-minute observation period required by State v. Chun, 194 N.J. 54, 79, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008). The court was satisfied that Filippone and Patner, as well as the matron, maintained sufficient proximity to the defendant to detect whether she did anything to compromise the chemical breath test, such as regurgitating or putting something in her mouth. The court noted that eye-to-eye contact was not required, citing State v. Carrero, 428 N.J. Super. 495, 513 (App. Div. 2012), and State v. Filson, 409 N.J. Super. 246, 258 (Law Div. 2009).

Relying on State v. O'Driscoll, 215 N.J. 461 (2013), the court found that the failure to mention the prospect of an ignition interlock in the standard statement was inconsequential, as there was no indication it affected defendant's non-compliance with the breath test. The court also rejected defendant's claim that she left the processing room to use the restroom, and that the police tampered with the video evidence. The court closely examined the video evidence, and concluded defendant's version of the facts lacked credibility.

Finally, the court found that the State proved refusal beyond a reasonable doubt. The court noted the four elements of the violation, citing State v. Marquez, 202 N.J. 485, 503 (2010):

> (1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs; (2) defendant was arrested for driving while intoxicated; (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and (4) defendant thereafter refused to submit to the test.

Based on the court's earlier findings, the State satisfied the first and second elements; and the video evidence and Filippone's testimony established the third and fourth.

The court focused on defendant's argument, based largely on Dr. Scolamiero's testimony, that her asthma rendered her incapable of producing the minimum volume required. The court noted that Chun required most arrestees to produce a minimum volume of 1.5 liters over 4.5 seconds, and a minimum flow rate of 2.5 liters per minute. Chun, supra, 194 N.J. at 97. Women over sixty years of age have to produce 1.2 liters over 4.5 seconds. Ibid.

The court found that Dr. Scolamiero's testimony ultimately did not establish lack of capability. The court noted that he

10                                                          A-0473-14T2

testified that during her November 2011 test, the last one before the accident, she had a pre-treatment ability to blow 1.3 to 1.4 liters over about four to five seconds, which improved to three liters after treatment. She also had a minimum flow rate of 1.74 liters per minute, pre-treatment. The court noted that defendant provided her breath samples after using her inhaler.[4]

The court found defendant guilty of DUI and refusal and imposed the same sentence that the municipal court imposed.

On appeal, defendant presents the following points for our review, renewing many of the arguments presented to the Law Division:

> Point 1: No Probable Cause.
>
> Point 2: Credibility of the Police Officers.
>
> Point 3: Twenty Minute Observation Period.
>
> Point 4: Court Is Limited to Impose Only Consequences That The Defendant Had Been Informed Of; Incorrect Information on Ticket #1410-EHT-002619.
>
> Point 5: Tampering With Evidence.

---

[4] The court also stated that "defendant never tells the [o]fficers that she is incapable of producing the required volume; instead she informs the [o]fficers repeatedly that she uses and had just used her inhaler." However, as noted, defendant did tell Filippone that she had asthma after she failed to provide sufficient air volume in her first attempt.

II.

In reviewing a trial court's decision on a municipal appeal, we determine whether sufficient credible evidence in the record supports the Law Division's decision. Johnson, supra, 42 N.J. at 162. Unlike the Law Division, which conducts a trial de novo on the record, R. 3:23-8(a)(2), we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). In addition, under the two-court rule, only "a very obvious and exceptional showing of error" will support setting aside the Law Division and municipal court's "concurrent findings of facts . . . ." Id. at 474. However, where issues on appeal turn on purely legal determinations, our review is plenary. State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)), certif. denied, 209 N.J. 430 (2012).

Applying this standard of review, we affirm defendant's conviction substantially for the reasons set forth in the written opinion of the Law Division judge. We comment only on two aspects of defendant's challenge to her refusal conviction: the officer's failure to inform her that an ignition interlock would be required if convicted of refusal; and allocation of the burden of proof on the issue of her alleged incapability to complete the chemical breath test.

Defendant renews her argument that she was not adequately informed of the consequences of refusal because the officer did not mention the ignition interlock requirement. We recognize that the standard statement in use when defendant was arrested in April 2012 did not refer to imposition of the ignition interlock requirement upon conviction, notwithstanding that the requirement was made a mandatory consequence of conviction in 2010. L. 2009, c. 201, §§ 2, 5 (Jan. 14, 2010). The standard statement promulgated by the Attorney General was not revised to incorporate mention of the ignition interlock consequences until July 2012. See Office of the Attorney Gen., Standard Statement for Motor Vehicle Operators (July 1, 2012), available at http://www.nj.gov/oag/dcj/njpdresources/dui/pdfs/english1.pdf.

In O'Driscoll, supra, 215 N.J. at 468-69, 473-74, the Court addressed the closely related issue of an officer's reading of an outdated standard form that failed to incorporate various enhancements of the license suspension period and potential fines. The Court held that the question of whether a defendant could avoid conviction for refusal because he was erroneously read a superseded or outdated standard statement was subject to a materiality test. Id. at 476. "Courts should consider whether an error in the reading of the standard statement is

material in light of the statutory purpose to inform motorists and impel compliance." Id. at 466. The Court stated that neither prior case law, nor the "language of the implied consent statute . . . require absolute precision." Id. at 476.

In making the materiality finding, courts must "examine whether a defendant reasonably would have made a different choice and submitted to a breath test had the officer not made an error in reciting the statement." Id. at 466. Under this approach, "discrepancies that would not have influenced a reasonable driver's choice to submit to a breath test would not" be deemed material and would not warrant reversal. Id. at 477-78. However, "substantive errors that do not adequately inform motorists of the consequences of refusal and would affect a reasonable person's decision-making would be problematic." Id. at 478. The evaluation of a deviation's materiality "requires a case-by-case evaluation of the facts." Ibid. Considering the facts in O'Driscoll, the Court found "the officer's mistakes were inconsequential" and the sentence imposed was within the range recited by the officer. Id. at 478-79.

We note that O'Driscoll was decided in September 2013, after all but summations and decision in the Municipal Court, but before the trial de novo. The record contains no testimony or other competent evidence to indicate that the mandated use of

14

an ignition interlock device for six months would have deterred defendant from refusing, particularly inasmuch as the prospect of a lengthy license suspension did not. We therefore reject defendant's argument that her conviction should be set aside because the standard statement failed to advise her of the ignition interlock requirement.

B.

We also conclude that a defendant bears the burden of proof regarding his or her alleged physical impairment to complete a chemical breath test.

The Court has held a defendant who defends a refusal charge by claiming he did not speak or understand English, and therefore did not understand the request to submit to the test, bears both the burden of production and persuasion on the issue. Marquez, supra, 202 N.J. at 514. This approach places the burden on the party with the greatest access to information on the issue, and "help[s] separate feigned claims from real ones." Ibid. Similarly, a defendant bears the burden of persuasion to establish he was too confused to refuse. State v. Leavitt, 107 N.J. 534, 542 (1987); State v. Sherwin, 236 N.J. Super. 510, 518 (App. Div. 1989). Although we are unaware of published New Jersey authority that places the burden on a defendant to prove

15

physical incapability to perform a breath test, this allocation of the burden is consistent with Marquez and Leavitt.

Our conclusion is also consistent with out-of-state authority. See, e.g., Hollis v. Oklahoma, 183 P.3d 996, 999-1000 (Okla. 2008) (requiring defendant to present evidence he was mentally incapable of giving a knowing and conscious refusal); Dep't of Transp. v. Kelly, 335 A.2d 882, 884 (Pa. Commw. Ct. 1975) (placing burden on defendant to prove by competent evidence he was physically incapable of submitting to Breathalyzer test); Cunningham v. Bechtold, 413 S.E.2d 129, 135-36 (W. Va. 1991) (defendant had burden to show medical disability, in form of broken nose, prevented him from breathing into Breathalyzer); see also Harvey M. Cohen & Joseph B. Green, Apprehending and Prosecuting the Drunk Driver § 5.07(7)(e) (2015) ("In those courts where a refusal may be excused with evidence that the defendant's ability to comply was legitimately impaired, the defendant bears the burden of proving the disability."); Richard E. Erwin, Defense of Drunk Driving, Criminal-Civil (3d ed. 2015) § 4.08[8] ("The driver has the burden of proving by competent evidence that he or she was physically unable to take the test. When no obvious inability is apparent, the driver must support a claim of inability with

competent medical evidence, and failure to provide such evidence will result in a finding of refusal.").[5]

Applying these principles, we discern no error in the court's finding that defendant failed to demonstrate she was incapable of performing the chemical breath test. Dr. Scolamiero's testimony was often confusing and inconsistent. He persuasively demonstrated that defendant suffered from asthma and her breathing capacity was roughly half that predicted of a woman her age and size. He also presented measurements of pre-treatment breathing volumes and flow rates that fell below the levels required for the chemical breath test.

However, defendant's measurements doubled after treatment, producing a volume of three liters, which exceeded the minimum requirement. Even if it were reduced by twenty percent to account for a seated position, the measurement would exceed the required 1.5 liters. The doctor was not asked whether two puffs from an inhaler, as defendant took in the processing room, would produce such an improvement. Nor was he asked, after presenting

---

[5] Under the Criminal Code, "A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable." N.J.S.A. 2C:2-1(a). However, "the provisions of the Code governing principles of liability are not applicable to the motor vehicle violation of driving while intoxicated . . . ." State v. Hammond, 118 N.J. 306, 318 (1990).

his testing data, whether he believed defendant was capable of producing sufficient air volume when she was tested by Filippone. Thus, the court reasonably found that defendant failed to meet her burden of proving she was physically incapable of producing the minimum air volume.

C.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0473-14T2