**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0771-15T1
            A-0835-15T1

SAM KHOUDARY,

    Plaintiff-Appellant,

v.

CITY OF NEW BRUNSWICK,
JAMES P. HOEBICH, J.M.C.,
CHARLY GAYDEN and RONALD
BELLAFRONTE,

    Defendants-Respondents.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAM KHOUDARY,

    Defendant-Appellant.

_____

        Argued May 9, 2017 — Decided September 26, 2017

        Before Judges Espinosa and Grall.

        On appeal from Superior Court of New Jersey,
        Law Division, Middlesex County, Docket No. L-
        0471-15 and Municipal Appeal No. 50-2014.

Nicholas Khoudary argued the cause for appellant (Sam Khoudary, on the pro se briefs).

Joseph S. Surman, Jr. argued the cause for respondents in A-0771-15 (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Surman, of counsel and on the brief).

Charly Gayden, Assistant City Attorney, argued the cause for respondent in A-0835-15 (T.K. Shamy, New Brunswick City Attorney, attorney; Mr. Gayden, on the brief).

PER CURIAM

These two appeals, which we have calendared back-to-back, arise from a decades-long dispute between the City of New Brunswick (the City) and Sam Khoudary regarding violations of municipal housing ordinances. For the reasons set forth below, we dismiss Khoudary's appeal in A-0771-15 and reverse his conviction in A-0835-15.

I.

In A-0771-15, Sam Khoudary appeals from an order dated September 4, 2015 granting summary judgment to the City of New Brunswick, dismissing his complaint with prejudice.

Rule 2:6-1(a)(1) identifies the required contents of an appellant's appendix and states in pertinent part,

> If the appeal is from a summary judgment, the appendix shall also include a statement of all items submitted to the court on the summary judgment motion and all such items shall be included in the appendix . . . .

Defendant's appendix does not include the items submitted to the trial court on the summary judgment motion or a statement of such items. In reviewing a summary judgment decision, we apply the same standard as the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Summary judgment is appropriate if the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Without the omitted items, we cannot properly review this matter. Accordingly, we are constrained to dismiss the appeal. See Society Hill Condominium Ass'n, Inc. v. Society Hill Associates, 347 N.J. Super. 163, 177-78 (App. Div. 2002).

## II.

In A-0835-15, defendant Sam Khoudary appeals from orders entered in the Law Division following his appeal from the municipal court's decision convicting him of contempt and ordering his immediate incarceration. By order entered May 8, 2015, the Law Division judge convicted Khoudary of contempt of court and ordered his incarceration. Khoudary's motion for reconsideration was denied by order entered on August 28, 2015.

A.

Between 1994 and 2011, forty-four summonses were issued by the City of New Brunswick (the City) for violations of municipal housing ordinances at the property located at 377 Delevan Street in New Brunswick (377 Delevan). Thirty-one of the violations were addressed in three time payment orders (TPOs), requiring defendant to pay $24,780. The ownership of 377 Delevan has been transferred between various LLCs, all of which have the same business address as defendant.

On August 25, 2014, defendant appeared in New Brunswick Municipal Court in an effort to reach a global settlement as to all outstanding obligations for summonses issued against 377 Delevan and two other properties purportedly owned and managed by defendant. Although defendant denied ownership of the properties, his attorney represented that he was "taking responsibility," as manager or a shareholder or a managing partner, for settling the obligations.

Unable to reach a settlement agreement, the parties returned to court on September 15, 2014, for "a contempt of court hearing with regard to outstanding payment obligations."

The municipal court judge determined ownership of the properties was no longer an issue because defendant had not appealed a 2000 decision. He stated the only remaining issue was

"who took responsibility for the payment of the fines and obligations." The municipal court judge reviewed audiotapes of earlier proceedings to determine if defendant had been present "when these fines and penalties were imposed and . . . took responsibility," stating:

> [B]y submitting to the jurisdiction of the court, he assumes responsibility. . . .
>
> If he appeared before a judge and pled guilty and agreed to pay a fine by way of him submitting to the jurisdiction of the court, that's it.

After taking a recess to review the audiotapes, the municipal court judge determined "[t]he payment obligations are directly [defendant's] obligations." Defendant contested this finding of personal liability because the summonses in the TPOs were not issued against him personally, and stated he was only "willing to assume responsibility" in the past as "part of the settlement negotiations."

The municipal court judge found defendant in contempt of court for failing to pay the TPOs because the obligations in the summonses contained therein, which were issued between 1994 and 2001, had been left unpaid by defendant for over a decade. Finding defendant's failure to pay the TPOs was a willing and knowing violation, the municipal court judge entered a commitment order convicting defendant of contempt for the non-payment of the TPOs,

which totaled $24,780, and sentenced him to three consecutive six-month terms in jail, one for each TPO. The municipal court judge told defendant he was either "paying . . . or going to jail for the next 18 months." Defendant was immediately incarcerated. The parties were told to return to court at a later date "to address the other outstanding obligations" against the properties.

Two days later, defendant's counsel arranged for $51,023 to be paid to the City to "satisfy all of the outstanding claims violations and defaulted payment schedules outstanding against" defendant, his wife "and all of the entities for which [defendant] is now incarcerated." Defendant was released from jail that day.

Defendant appealed the commitment order to the Law Division. The Law Division judge rejected defendant's contention he was not personally liable for the TPO obligations. Defendant also contested the $51,023 amount he claimed the City required him to pay for his release from jail, equating it to "someone [having] a gun over [his] head." The attorney for the City explained that the amount was agreed upon with defense counsel to achieve a global settlement of all outstanding obligations. The Law Division judge rejected defendant's argument, stating defendant could have requested a stay from the municipal court, and if denied, could have appealed the denial to the Law Division. He concluded, "everything was done properly, below."

By order dated May 8, 2015, the Law Division judge affirmed the municipal court's decision "finding Defendant to be <u>in contempt for default</u> of the Time Payment orders in the amounts of $3,175.00, $15,730.00 and $5,875.00." (Emphasis added). The judge also found the municipal court "properly exercised the discretion granted to the Court under <u>N.J.S.A.</u> 40:49-5 to incarcerate defendant for defaulting on time payments for ordinance violations," and that defendant previously appeared in municipal court and "entered guilty pleas on several ordinance violations."

Defendant moved for reconsideration and for the return of overpaid funds. Defendant claimed he was required to pay the $51,023 amount for his release from jail. The City admitted that $51,023 exceeded the amount the municipal court had required defendant to pay, but claimed the amount was agreed upon as a settlement of all outstanding obligations. The Law Division judge accepted the City's argument, denied the motion for reconsideration and affirmed defendant's conviction and sentence. He stated the order required clarification, that the matter was "really not contempt, because it's not under the rule," and the matter concerned an application of <u>N.J.S.A.</u> 40:49-5.

B.

Defendant presents the following issue for our consideration in his appeal:

INCARCERATION ORDERED UNDER THE PREMISE OF CONTEMPT OF COURT WAS NOT APPROPRIATE AND EXCEEDED THE JURISDICTIONAL AUTHORITY OF THE MUNICIPAL COURT ESPECIALLY WITH NO FINDING OF GUILT OF ANYTHING

A trial court deciding a municipal appeal pursuant to Rule 3:23-8(a) must review the record de novo and make its own decision regarding a defendant's guilt or innocence. State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v. Johnson, 42 N.J. 146, 157 (1964)). "[A]ppellate review of a municipal appeal to the Law Division is limited to 'the action of the Law Division and not that of the municipal court.'" State v. Hannah, 448 N.J. Super. 78, 94 (App. Div. 2016) (quoting State v. Palma, 219 N.J. 584, 591-92 (2014)). When we review "a trial court's decision on a municipal appeal, we determine whether sufficient credible evidence in the record supports the Law Division's decision." State v. Monaco, 444 N.J. Super. 539, 549 (App. Div.), certif. denied, 228 N.J. 409 (2016). "We do not weigh the evidence, assess the credibility of the witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1998). "However, where issues on appeal turn on purely legal determinations, [appellate] review is plenary." Monaco, supra, 444 N.J. Super. at 549 (citing State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012)).

The Law Division judge rejected the label "contempt" for the proceeding here and considered the commitment order justified by N.J.S.A. 40:49-5, which states in pertinent part:

> Any person convicted of the violation of any ordinance <u>may, in the discretion of the court</u> by which he was convicted, and <u>in default of the payment of any fine imposed therefor</u>, be imprisoned in the county jail or place of detention provided by the municipality, for any term not exceeding 90 days, or be required to perform community service for a period not exceeding 90 days.

> [(Emphasis added).]

Although the underlined language would seem to endow a court with discretion to incarcerate a defendant who fails to pay a fine simply upon the occasion of a default, it cannot reasonably be construed to relieve the court of the obligation to afford the defendant the rights concomitant to a charge of contempt of court and to refrain from incarcerating a defendant unless the failure to pay was willful.

Notwithstanding the Law Division's characterization of the proceeding, defendant's failure to pay the obligations imposed by the TPOs was treated as a summary contempt proceeding.

> The law of contempt is derived from statutes, rules of court, and judicial decisions. In general, contempt includes disobedience of a court order or misbehavior in the presence of the court by any person or misbehavior by an officer of the court in his official

transactions. The essence of the offense is defiance of public authority.

A defendant is entitled to certain safeguards accorded criminal defendants. Those safeguards include the presumption of innocence, the privilege against self-incrimination, the right of cross-examination, proof of guilt beyond a reasonable doubt, and the admissibility of evidence in accordance with the rules of evidence.

[Amoresano v. Laufgas, 171 N.J. 532, 549 (2002) (quoting In re Yengo, 84 N.J. 111, 119-20 (1980)) (alterations in original).]

Apart from contempt in the face of the court, which is governed by Rule 1:10-1, an order to show cause is a necessary prerequisite to summary contempt proceedings. See R. 1:10-2 (stating institution of summary contempt proceedings, other than proceedings under Rule 1:10-1, shall be on notice to the alleged contemnor and instituted only "by the court upon an order for arrest or an order to show cause specifying the acts or omissions alleged to have been contumacious.") It is undisputed that there was no order to show cause prior to the "contempt" proceeding.

Rule 1:10-1 "authorizes a court to adjudicate contempt summarily, without issuing an order to show cause, under certain conditions," Amoresano, supra, 171 N.J. at 546. It provides:

A judge conducting a judicial proceeding may adjudicate contempt summarily without an order to show cause if:

(a) the conduct has obstructed, or if continued would obstruct, the proceeding;

(b) <u>the conduct occurred in the actual presence of the judge</u>, and was actually seen or heard by the judge;

(c) <u>the character of the conduct or its continuation after an appropriate warning unmistakably demonstrates its willfulness</u>;

(d) <u>immediate adjudication is necessary</u> to permit the proceeding to continue in an orderly and proper manner; and

(e) the judge has afforded the alleged contemnor an <u>immediate opportunity to respond</u>.

The order of contempt shall recite the facts and contain a certification by the judge that he or she saw or heard the conduct constituting the contempt and that the contemnor was willfully contumacious. Punishment may be determined forth with or deferred. <u>Execution of sentence shall be stayed for five days following imposition</u> and, if an appeal is taken, during the pendency of the appeal, provided, however, that the judge may require bail if reasonably necessary to assure the contemnor's appearance.

[(Emphasis added).]

Even if we accept the City's argument that defendant was provided adequate notice and an opportunity to be heard, the other requirements attendant to a commitment order summarily issued for contempt, as reflected in the underlined language above, were clearly not met.

Because the terms of the commitment order provided for defendant's release upon payment of the identified TPO obligations, the proceeding more closely resembled a summary collection action pursuant to N.J.S.A. 2C:46-2(a), which provides the consequences for nonpayment of an obligation a defendant has been sentenced to pay. The statute contains similar language regarding a "default" in payment but also sets forth the necessary criteria that must be satisfied before the defaulting defendant may be incarcerated. When a defendant defaults in the payment of a court-imposed financial obligation, upon motion,

> the court shall recall him, or issue a summons or a warrant of arrest for his appearance. The court shall afford the person notice and an opportunity to be heard on the issue of default. Failure to make any payment when due shall be considered a default. The standard of proof shall be by a preponderance of the evidence, and the burden of establishing good cause for a default shall be on the person who has defaulted.

N.J.S.A. 2C:46-2(a)(1) identifies the sanctions available to the court "[i]f the court finds that the person has defaulted without good cause." A term of imprisonment may only be imposed "[i]f the court finds that the person defaulted on payment of a court-imposed financial obligation . . . without good cause and finds that the default was willful." N.J.S.A. 2C:46-2(a)(2) (emphasis added).

For a default to be willful, the defendant must be able to comply with the order. This is particularly true here, where the clear objective of the commitment order was to coerce defendant into paying the TPO obligations. See In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 18-19 (2015) (noting the "punitive or coercive relief under [Rule 1:10-3] cannot be used against one who is not a willful violator of a judgment"); Schochet v. Schochet, 435 N.J. Super. 542, 548-494 (App. Div. 2014) (noting "objective of [Rule 1:10-3] hearing is simply to determine whether . . . failure [to comply with an order] was excusable or willful").

In sum, the "contempt" proceeding here was not initiated by an order to show cause; it was conducted in response to defendant's failure to reach a global settlement with the City. There was no proceeding to determine whether defendant had the ability to comply with the $24,780 in TPO obligations that were the subject of the commitment order and, therefore, no credible determination that his failure to pay was willful. N.J.S.A. 40:49-5 did not grant the municipal court or the Law Division discretion to incarcerate defendant without satisfying these threshold requirements for punitive or coercive incarceration for failure to pay a fine. We therefore conclude the Law Division judge erred in finding defendant guilty and affirming his incarceration. We reverse defendant's conviction.

Defendant also asks the court to compel the return of the $51,023 paid prior to his release.[1] This issue is not properly before us because the sum was not established as a sentence on this conviction.

In sum, we dismiss the appeal in A-0771-15 and reverse the judgment in A-0835-15.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Defendant argues the municipal court judge required him to pay $51,023 as a condition of his release. As he concedes, however, this alleged condition "was not set forth in any order." Nonetheless, he claims "it was advised by prosecution." Whatever the City attorney said in conversation with defense counsel, the order entered by the court controlled. In the absence of any order or even a transcript of such a direction by the court, this contention lacks merit.