**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2113-18T2

ROSTISLAV VILSHTEYN,

    Plaintiff-Appellant,

v.

POLICE OFFICER MININO
GOROSPE, in his individual
capacity,

    Defendant-Respondent.

_____

Argued January 21, 2020 – Decided February 4, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-4417-16.

Shay S. Deshpande argued the cause for appellant (Franzblau Dratch, PC, attorneys; Shay S. Deshpande, of counsel and on the briefs).

Philip G. George argued the cause for respondent (Eric M. Bernstein & Associates, LLC, attorneys; Eric Martin Bernstein, of counsel and on the brief; Philip G. George, on the brief).

PER CURIAM

In his complaint, plaintiff alleged that defendant violated his civil rights by falsely arresting and charging him with driving while intoxicated (DWI), N.J.S.A. 39:4-50, and fourth-degree assault by automobile, N.J.S.A. 2C:12-1(c)(2). A municipal court judge found probable cause existed to charge him with DWI, and a grand jury later indicted and charged him with the criminal offense. The judge granted summary judgment to defendant after finding that—based on the facts known to defendant at the time he arrived at the scene of the accident—probable cause existed to charge plaintiff with committing these offenses.

Plaintiff appeals arguing:

POINT I

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED BECAUSE THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO PROBABLE CAUSE TO CHARGE PLAINTIFF WITH A CRIME.

POINT II

THE [JUDGE] ERRED IN DETERMINING THERE WAS NO CAUSATION AS A MATTER OF LAW BETWEEN PLAINTIFF'S INCARCERATION AND DEFENDANT'S ACTION.

POINT III

PLAINTIFF'S ATTORNEY'S INDICATIONS AS TO
"PROBABLE CAUSE" IN THE UNDERLYING
PROCEEDINGS DO NOT ESTABLISH PROBABLE
CAUSE FOR PURPOSES OF THIS ACTION.

We disagree and affirm.

When reviewing an order granting summary judgment, we apply the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg, 224 N.J. 189, 199 (2016). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We therefore consider—as the judge did—the facts in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Plaintiff ran a red light causing a serious accident. Defendant arrived at the scene and interviewed the drivers and passengers of the vehicles. Defendant learned that plaintiff was swerving prior to the accident. Defendant observed that "[p]laintiff's eyes were glassy, that his pupils were constricted despite the fact that they were outdoors and that [p]laintiff was swaying from side-to-side

3

in order to maintain his balance." Plaintiff denied that he was under the influence of alcohol or drugs, but he consented to field sobriety tests, which he failed. Defendant observed further that plaintiff had difficulty balancing, his hand movements were "unusually slow and deliberate," and he slurred his words.

Because plaintiff failed the tests, and as a result of the observations by defendant and two other officers, they arrested and charged him with DWI. As police transported plaintiff to headquarters, he began shouting and rambling that police mistreat people, bend the law, and manhandle people. At headquarters, plaintiff admitted that he was taking prescription Oxycodone, Methadone, Xanax, and Ambien, which was verified by his urine samples.[1] Following instructions from a lieutenant, defendant also charged plaintiff with the criminal offense.

Unrelated to the accident, plaintiff had been enrolled in the Intensive Supervision Program (ISP). That is so because he had a prior conviction. These charges led to an ISP violation and incarceration.

---

[1] Plaintiff took an Alcotest, which returned a "0.00" reading. He was then administered a Drug Recognition Exam (DRE) by a certified DRE officer. The DRE officer concluded—approximately four hours after the initial arrest—that plaintiff was not "under the influence" of any drugs.

The State dismissed the DWI charge and resolved the criminal charge on remand to the municipal court, where plaintiff pled guilty to careless driving.

When a plaintiff claims that he was unlawfully arrested, an officer—like here—can assert qualified immunity by establishing that there existed probable cause or that a reasonable officer would have believed that probable cause existed. Morillo v. Torres, 222 N.J. 104, 118-19 (2015).

> Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial.
>
> [Saucier v. Katz 533 U.S. 194, 200-01 (2001) (internal quotation marks and citations omitted).]

"The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties." Morillo, 222 N.J. at 107. It protects officers who performed their duties in an "objectively reasonable" manner, regardless of whether they made a mistake of fact. Id. at 108.

In deciding whether an officer is entitled to qualified immunity, New Jersey courts apply the two-prong test set forth in Saucier, 533 U.S. at 199; accord Morillo, 222 N.J. at 115. A court must determine: (1) whether the

officer's actions violated a constitutional or statutory right that was clearly established at the time of incident; and (2) whether reasonable officers in the same situation would have believed plaintiff's conduct was unlawful and that the officer's responsive actions were reasonable. Saucier, 533 U.S. at 199; accord Morillo, 222 N.J. at 114.

As to the first prong, "the clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 580 U.S. ___, 137 S. Ct. 548, 552 (2017) (citation omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Morillo, 222 N.J. at 118 (citations omitted). If the right was not clearly established at the time, the inquiry ends there, and the officer is entitled to qualified immunity. Saucier, 533 U.S. at 199.

As to the second prong, the officer's actions are assessed under an objectively reasonable test, considering all relevant facts and circumstances from an "on-scene perspective." Id. at 205. Courts should not apply "'20/20 vision of hindsight,'" but rather should give "deference to the judgment of reasonable officers on the scene." Ibid. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Courts may only consider facts that were known to the officers at the time. White, 580 U.S. at ___.

"[P]robable cause is an absolute defense to an allegation of malicious prosecution or false arrest[.]" Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007) (citing Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000)). Probable cause is "'a well-grounded suspicion that a crime has been or is being committed.'" State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). It exists "where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." Ibid. (alterations in original) (quoting O'Neal, 190 N.J. at 612).

Courts must consider the totality of the circumstances in determining whether probable cause exists. Schneider v. Simonini, 163 N.J. 336, 361 (2000) (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Gates, 462 U.S. at 235 (citation omitted). "[W]hether, under the circumstances, a reasonable police officer could have believed that probable cause existed . . . . is a standard of objective reasonableness, which is a lesser standard than required for probable cause." Schneider, 163 N.J. at 365. "The only time that standard is not satisfied is when, 'on an objective basis, it is

obvious that no reasonably competent officer would have concluded that'" probable cause existed. Id. at 366 (citation omitted).

Defendant learned from two other drivers involved in the incident that plaintiff failed to stop at a red light. Plaintiff's "speech was slurred," his words were hard to understand, and he was having trouble following directions. Plaintiff admitted that he was taking Oxycodone, Methadone, Xanax, and Ambien, and he had the prescription bottles on his person at the time of the accident. During the field sobriety tests, plaintiff "was swaying side[-]to[-]side attempting to maintain his balance." Defendant noted plaintiff's hand movement was slow, "he had droopy eyelids," and that his body was rigid, presumably to keep him upright.

These common symptoms of intoxication established probable cause that plaintiff was under the influence. Numerous cases have also identified that probable cause exists based on some or all of these symptoms. See, eg., State v. Bealor, 187 N.J. 574, 590 (2006) (driver engaged in "erratic and dangerous driving" and had "slurred and slow" speech, "droopy eyelids," and trouble standing straight); State v. Morris, 262 N.J. Super. 413, 421 (App. Div. 1993) (driver was "very agitated" and "yelling and screaming," was "very wobbly," and had slurred speech); State v. Cleverley, 348 N.J. Super. 455, 457 (App. Div.

A-2113-18T2

2002) (driver was unable to perform the leg raising test, had slurred speech, and was argumentative); and State v. Monaco, 444 N.J. Super. 539, 543-44 (App. Div. 2016) (driver drove through a stop sign and onto the curb deploying airbag, staggered and swayed, slurred speech, and performed poorly on field sobriety tests).

The municipal court judge found that probable cause existed. Additionally, the grand jury found that probable cause existed to charge plaintiff with the fourth-degree offense, which is presumptive evidence that there was probable cause to prosecute. See Zalewski v. Gallagher, 150 N.J. Super 360, 368 (App. Div. 1977) (emphasizing that the return of an indictment is "prima facie or presumptive evidence that defendant has probable cause to prosecute").

Therefore, there existed substantial evidence that defendant—at the time he arrived at the scene of the accident—had probable cause to charge plaintiff and arrest him. We emphasize that defendant, an experienced police officer, determined plaintiff was under the influence based on his observations of multiple signs of intoxication. The other officers' observations also substantiated defendant's belief that plaintiff was intoxicated.

Thus, defendant was entitled to summary judgment as a matter of law. Under the first prong of qualified immunity, defendant did not violate any

constitutional right because he had probable cause to arrest. As to the second prong, he observed multiple signs of intoxication, he solicited an admission from plaintiff, his actions were corroborated by other officers, and the judge dismissed plaintiff's charge.

Furthermore, plaintiff's incarceration was not within defendant's control— it was an ISP decision. Thus, we reject plaintiff's argument that the judge erred in holding there was no proximate cause between defendant's actions and plaintiff's imprisonment. Indeed, defendant did not arrest plaintiff for violating the terms of his ISP. ISP's decision to incarcerate plaintiff—even after the charges were resolved—was not within defendant's control.

ISP is essentially a "post-sentence, post-incarceration program of judicial intervention and diversion back to the community." State v. Clay, 230 N.J. Super. 509, 512 (App. Div. 1989); see R. 3:21-10(e). The program enumerates a very strict list of requirements that participants must adhere to in order to partake in the program. See State v. Cannon, 128 N.J. 546, 554-55 (1992). This court recognized ISP's ability to immediately re-incarcerate a participant pending resentencing for an ISP violation. See State v. Adams, 436 N.J. Super. 106, 113 (App. Div. 2014).

In terms of proximate causation, an intervening cause destroys the causal connection between defendant's conduct "where such an intervening cause constitutes an unforeseeable independent act which constitutes the immediate and sole cause" of the incident. Fink v. Ricoh Corp., 365 N.J. Super. 520, 575 (Law Div. 2003); see Davis v. Brooks, 280 N.J. Super. 406, 412 (App. Div. 1993). Only intervening causes that are reasonably foreseeable will not relieve a defendant of liability. Cruz-Menendez v. ISU/Ins. Servs., 156 N.J. 556, 575 (1999).

Defendant testified in his deposition—and it is undisputed—that prior to plaintiff's arrest, he had no knowledge that plaintiff was a participant in ISP. It wasn't until the arrest was processed and communicated to state police that defendant could have learned of plaintiff's ISP status. And as the municipal court judge noted, the ISP Board detained plaintiff even after discovering that the charges were resolved. Therefore, defendant's conduct was not the proximate cause of plaintiff's detainment.

Finally, plaintiff's counsel stipulated before the municipal court judge that there existed probable cause to issue the summonses. The municipal court judge further acknowledged this stipulation. Although plaintiff argues that facts conceded during a guilty plea are inadmissible, the stipulation did not occur

during the guilty plea colloquy. And there is no evidence in the record that plaintiff requested the stipulation be inadmissible in civil matters. See R. 7:6-2(a)(1).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2113-18T2