**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2630-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JESSICA FERGUSON,

    Defendant-Appellant.

_____

Submitted October 22, 2025 – Decided November 20, 2025

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Municipal Appeal No. 16-12-23.

Levow DWI Law, PC, attorneys for appellant (Evan M. Levow, of counsel and on the brief; Keith G. Napolitano Jr., on the brief.)

Sahil K. Kabse, Acting Sussex County Prosecutor, attorney for respondent (Jonathan E. McMeen, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jessica Ferguson appeals her conviction for refusal to submit to a breath test (Refusal), N.J.S.A. 39:4-50.4, following her arrest for driving while intoxicated (DWI). Defendant contends she was not informed of the consequences of refusing because her diagnosed attention-deficit/hyperactivity disorder (ADHD) prevented her from understanding the New Jersey Motor Vehicle Commission Standard Statement for Operators of a Motor Vehicle (standard statement) the officer read to her. We affirm.

I.

We glean the salient facts from the record before the Law Division, which included evidence adduced at the municipal court trial. At approximately 12:50 a.m. on April 24, 2024, Vernon Township Police Officer Matthew Hackett stopped a vehicle operating without its headlights activated. Officer Hackett smelled alcohol emanating from the vehicle and on the driver's breath. He also noticed the driver's eyes were bloodshot and watery. In response to whether she had consumed any alcohol, the driver replied that she had "two drinks." Based on these observations, Officer Hackett initiated field sobriety testing. The police subsequently identified the driver as defendant.

The officer asked defendant whether she had any injury or physical disability that would prevent her from performing the tests. Defendant

A-2630-23

responded only that she had been in an abusive relationship. The officer then attempted to administer the horizontal gaze nystagmus (HGN) and walk-and-turn tests.

While the officer was demonstrating the walk-and-turn test, defendant contended he was demonstrating the test too quickly for her to understand because she had ADHD. The officer responded that speed is a feature of administering this "divided attention test" which, in part, determines intoxication by gauging how well the demonstration is followed. Defendant also attempted to comply with the heel-to-toe test three times but abandoned the test, asserting that it was too difficult for her to remember the instructions. The officer then arrested defendant for DWI and transported her to police headquarters.

The parties do not dispute the following facts regarding the attempted administration of the breath test at headquarters: Officer Hackett read defendant the standard statement in its entirety. Officer Hackett then asked whether she would consent to providing a breath sample and defendant replied, "no." Officer Hackett read aloud the final paragraph of the standard statement, which reiterated that the subject will be charged with Refusal if anything less than unconditional consent is provided. Officer Hackett again asked whether

3

defendant would consent to breath testing. Defendant's reply was recorded as "no." Defendant was charged with DWI, N.J.S.A. 39:4-50; Refusal, N.J.S.A. 39:4-50.2; failure to have a vehicle inspection, N.J.S.A. 39:8-1; failure to use headlights, N.J.S.A. 39:3-47(a); driving with an expired license, N.J.S.A. 39:3-10; and reckless driving, N.J.S.A. 39:4-96.

At trial, defendant and Officer Hackett gave conflicting accounts of the reading of the standard statement and defendant's refusal to provide a breath sample. Officer Hackett testified that he read the standard statement "word for word," defendant's answer to the final question on the statement was "no," and she appeared coherent at that time.

Defendant testified that Officer Hackett read the standard statement "very quick[ly], to the point as if it was something that [she] had read previously and [they] were just reviewing it." Defendant asserted she did not understand what was being read to her, was not asked whether she understood it, and never responded "no" to the reiterated question of whether she would submit to a chemical breath test. Instead, defendant stated she did not verbalize a response because she had "completely shut down at that point" and Officer Hackett reacted to her silence by stating: "I'll take that as a no." Video recordings of the interaction between Officer Hackett and defendant were admitted into evidence.

4

Defendant testified that ADHD prevents her from processing verbal instructions and requires them to be broken down into "very short steps," coupled with visual illustrations. According to defendant, ADHD has impacted her career as a teacher because she has trouble processing what she reads and her ability to pursue a master's degree has been impeded. Defendant had never requested ADHD accommodations in the past. However, she began therapy and taking medication for her ADHD after the arrest.

Defense witness Christopher Friedrich, a licensed counselor qualified at trial as an expert on "symptomology and manifestations of ADHD, adult victimization, and trauma," testified to examining and testing defendant and reviewing the video of her interaction with the police. Friedrich's testing revealed defendant had an average "IQ," but she struggled with comprehending instructions for certain tests. Friedrich concluded defendant suffered from "inattentive type ADHD" as well as post-traumatic stress disorder (PTSD) stemming from domestic abuse.

Friedrich testified defendant could not have understood the standard statement, even if Officer Hackett read it "word by word." Friedrich asserted that being at the police station "was all a trigger" that caused defendant to "just shut[] down" due to her history of interaction with the police related to domestic

5

violence incidents. Friedrich also testified that, due to defendant's "very fragile mental health, not being cooperative is . . . expected."

The municipal court judge found Friedrich's testimony "intentionally slanted in [defendant's] favor" and defendant's testimony was not credible. After considering defendant's argument that ADHD prevented her from being informed of the consequences of Refusal, the judge stated:

> What this [c]ourt finds difficult [to] believe [is] that [defendant] completed college, obtained a degree in education, is employed as a teacher, never was prescribed medication nor sought therapy for ADHD or [PTSD], and [was] not . . . able to comprehend or understand simple directions. . . . [Defendant] acknowledged that . . . she understood the Miranda Warning, that she understood the HGN test. . . . The directions for the Breathalyzer test were all contained on one page with one basic question, will you take the . . . test?

The municipal court judge found defendant guilty of Refusal, failure to have a vehicle inspection, and failure to use headlights. The judge found defendant not guilty of DWI, driving with an expired license, and reckless driving. Defendant appealed only the Refusal conviction to the Law Division.

On de novo review, the Law Division judge reviewed the evidence presented in the municipal court and found defendant "clearly understood everything" surrounding the arrest, including the <u>Miranda</u> warnings, HGN test

6

instructions, and the standard statement itself. The Law Division judge found no evidence in the record that defendant had previously sought or received any treatment or accommodation for ADHD and considered that she had passed her driving test, graduated college, and became a teacher.

The Law Division judge reviewed the video evidence of defendant's interaction with the police and found defendant "was clearly aware of what [was] going on" because she responded by verbalizing an "unequivocal no" to Officer Hackett's initial request for a breath sample and her body language was consistent with refusal. The judge also found that defendant shook her head "no" twice after Officer Hackett's follow up request for the sample and then spoke the word "no" after the officer told her the answers needed to be verbalized, concluding there was "no doubt that she is affirmatively responding to what is required of her." The Law Division judge's review of the video showed she "appeared to be unhappy[,] [b]ut she [did] not appear to be unfocused."

The Law Division judge relied on the municipal court judge's credibility findings since that court had the opportunity to personally observe the witnesses who testified. The judge buttressed those findings with his own observation that defendant began the interaction with the police by lying about how many drinks

she consumed during the course of the evening.  The judge also found the video evidence did not corroborate defendant's testimony asserting the officers were unprofessional and that she did not understand Officer Hackett's directive regarding the breath test, before he concluded:

> [B]ecause this [c]ourt rejects the defendant's testimony on this point, rejects Mr. Friedrich's testimony on this point . . . and [the municipal court] found, that Officer Hackett's testimony was credible. It is supported without question by the audio and video from both the MVR and the body worn camera . . . [t]he officer requested the defendant to submit to a chemical breath test.  And informed the defendant of the consequences of refusing to do so.  She was informed by the reading of the standard form . . .  She was adequately informed.

The Law Division judge found the State proved the elements of the Refusal charge beyond a reasonable doubt and affirmed the municipal court judge's finding that defendant was guilty of Refusal.

Defendant appealed, raising a single argument for our consideration:

POINT I

[DEFENDANT] WAS NOT PROPERLY INFORMED OF THE CONSEQUENCES FOR REFUSING TO SUBMIT TO BREATH TESTING AND OF HER OBLIGATIONS UNDER THE LAW.

II.

A.

8

In reviewing the Law Division's decision on a municipal appeal, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001) (citing State v. Joas, 34 N.J. 179, 184 (1961)). Our review "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the [Law Division's] findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Unlike the Law Division, which conducts a trial de novo on the record . . . we do not independently assess the evidence." State v. Monaco, 444 N.J. Super. 539, 549 (App. Div. 2016) (citing Locurto, 157 N.J. 463, 471(1999)) (internal citation omitted).

Like the Law Division, we are not positioned to evaluate credibility in the same manner as the municipal court judge; thus, we "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). Instead, we defer to the credibility findings of the municipal court. Locurto, 157 N.J. at 474; State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000). No "special deference" is owed to the "[municipal] court's interpretation of the law and the legal consequences that flow from established facts." Comprehensive Neurosurgical, P.C. v. Valley

Hosp., 257 N.J. 33, 80 (2024) (quoting Rowe v. Bell & Gosset Co., 239 N.J. 531, 552 (2019)).

B.

Having reviewed defendant's contentions under this lens, we affirm defendant's Refusal conviction because there is sufficient credible evidence in the record to support the Law Division's finding that defendant was properly informed of the consequences of refusing to submit to a chemical breath test.

"Under N.J.S.A. 39:4–50.2(a), every motorist using the public roads in [New Jersey] is deemed to have given consent to undergo a chemical test to determine blood alcohol levels . . ." where a police officer has reasonable grounds to believe that person has been operating a motor vehicle under the influence of alcohol. State v. Mulcahy, 107 N.J. 467, 474 (1987) (quoting N.J.S.A. 39:4–50.2(a)). The statutorily-mandated process of obtaining consent from a motorist to submit to a breath test, N.J.S.A. 39:4–50.2(e), provides:

> No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with [N.J.S.A. 39:4–50.4a] . . . A standard statement, prepared by the chief administrator shall be read by the police officer to the person under arrest.

The Legislature authorized the standard statement as a procedural device to inform motorists of "the mandatory nature of the [breath] test, their limited rights to counsel for purposes of the test, and the need for unequivocal, affirmative consent." State v. Widmaier, 157 N.J. 475, 489 (1999); see also N.J.S.A. 39:4-50.2(d) (providing "[t]he police officer shall inform the person tested of [their] rights," namely, the rights to elect who draws the sample and to be provided a copy of test results upon request).

A motorist who fails to submit to a breath test at law enforcement's request will be charged with Refusal, triggering a mandatory suspension of the motorist's driving privileges. N.J.S.A. 39:4-50.4a. For the State to convict a defendant of Refusal, it must prove the following four elements beyond a reasonable doubt, State v. Cummings, 184 N.J. 84, 95-96 (2005), as derived by our Supreme Court from the applicable statutes:

> (1) the arresting office had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs;
>
> (2) defendant was arrested for driving while intoxicated;
>
> (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and

11

(4) defendant thereafter refused to submit to the test.

> [Marquez, 202 N.J. at 503 (citing N.J.S.A. 39:4-50.2(e), 39:4-50.4a(a); State v. Wright, 107 N.J. 488, 490 (1987))].

We are unconvinced the Law Division erred in affirming defendant's Refusal conviction. Based on a thorough review of the evidence deemed credible by the municipal court, the Law Division judge found defendant "understood what had been presented to her" and, as a result, concluded she was informed of the consequences of refusing to submit to breath testing. We discern no error because the Law Division's decision was predicated on substantial, credible evidence from which the "findings made could reasonably have been reached." Johnson, 42 N.J. at 162.

We are unpersuaded by defendant's contention that her circumstances are analogous to the Spanish-speaking defendant in State v. Marquez, 202 N.J. 485 (2010), who was read the standard statement in English. In Marquez, the Court concluded an officer's reading of the standard statement in English to a Spanish-speaking-only defendant "failed to inform [the] defendant of the consequences of refusal, as required" by N.J.S.A. 39:4-50.4a(a). Id. at 514. Here, Marquez is factually inapposite since defendant was read the standard statement in English, a language she concededly speaks and understands. The Court has not extended

12

Marquez beyond the narrow context of a language barrier preventing a non-English speaker from understanding the standard statement.

Our decision would not be altered in this case, even if we were to conclude Marquez could be applied to render the officer's reading of the standard statement to a defendant as ineffective based on ADHD. The Marquez Court held the State need not prove a defendant subjectively understood the standard statement to sustain a Refusal conviction, only that the police convey information in a language person speaks or understands. Id. at 513 (citing Widmaier, 157 N.J. at 498). Here, the only evidence supporting defendant's contention that ADHD prevented her from understanding the standard statement—defendant's and Friedrich's testimony—was not found credible.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13

A-2630-23